IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINISAR CORPORATION, | No. C 08-3388 MMC |
| Plaintiff, | **ORDER DISMISSING FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| JDS UNIPHASE CORPORATION, | |
| Defendant / | |

Before the Court is defendant JDS Uniphase Corporation's ("JDSU") Motion for Summary Judgment, or in the Alternative, Summary Adjudication, filed December 16, 2008. Plaintiff Finisar Corporation ("Finisar") has filed opposition, to which JDSU replied. The Court, after considering the above-referenced submissions, directed the parties to file supplemental briefs with respect to subject matter jurisdiction, and the parties thereafter filed supplemental briefing. Having and read considered the parties' respective submissions, the Court rules as follows.[1]

## **BACKGROUND**[2]

In November 2003, Finisar, through a predecessor, and JDSU, through a predecessor, entered into a written license agreement, under which JDSU granted Finisar a

---

[1] By order filed March 24, 2009, the Court took the matter under submission.

[2] The following facts are undisputed, except where otherwise noted.

license to use the "Picolight Licensed Patents" ("the November 2003 Agreement"). (See Jewell Decl. Ex. B.) Finisar is required thereunder to pay JDSU royalties for products that "would infringe one or more valid and unexpired claims of the Picolight Licensed Patents but for [the November 2003] Agreement." (See id. Ex. B at ¶¶ 1.2, 2.2, 3.2.)

In January 2007, the Chief Executive Officer of Finisar and the Chief Executive Officer of JDSU's predecessor agreed to enter into negotiations to modify Finisar's obligations to pay royalties under the November 2003 Agreement in exchange for Finisar's licensing some of its patents to JDSU. (See Hall Decl. Ex. C at 54, 61; Hane Decl. ¶ 2.) The parties disagree, however, as to whether, at that time, Finisar and JDSU's predecessor, through their respective Chief Executive Officers, entered into an oral agreement under which JDSU's predecessor agreed that Finisar would not have to pay royalties under the November 2003 Agreement until August 21, 2007. (See Hall Decl. Ex. C at 54, 61, 63-64; Hane Decl. ¶¶ 2-6.)

After the January 2007 meeting, officers of Finisar and JDSU negotiated the terms of a cross-license, and, in August 2007, exchanged a series of emails discussing the terms of a cross-license. (See Hall Decl. Exs. E-K; Jewell Decl. Ex. A.) The parties are not in accord, however, as to whether such emails created an agreement under which each party had a license to use certain patents of the other party and Finisar no longer had an obligation to pay royalties under the November 2003 Agreement. (See Hall Decl. Exs. E-K; Yamalova Decl. ¶ 3; Jewell Decl. ¶¶ 5-7.)

On March 26, 2008, Finisar's Associate General Counsel, in response to a demand by JDSU for royalties under the November 2003 Agreement,[3] wrote a letter to JDSU's General Counsel stating, "Finisar believes that it does not owe any royalties to JDSU under the November 2003 License Agreement because, at the very least, [JDSU's predecessor] and Finisar agreed in January 2007 and JDSU and Finisar agreed in August 2007 to terms in which JDSU and [JDSU's predecessor] waived any obligation on the part of Finisar to

---

[3] Neither party offers any evidence as to when JDSU made such demand or the circumstances under which it was made.

2

pay any such royalties." (See Yamalova Decl. ¶ 7, Ex. A.)

On April 29, 2008, JDSU's General Counsel responded in an email in which he stated that "a collection action is ready to commence," and to which he attached a proposed complaint, captioned "Complaint for Breach of Contract," that JDSU was prepared to file in Santa Clara County Superior Court. (See id. Ex. E.) The proposed complaint was based on an allegation that Finisar breached the November 2003 Agreement by "falsely claiming that [JDSU] entered into an agreement waiving its rights to royalty payments," and sought "compensatory damages" and a declaration that JDSU was entitled to conduct an audit under the terms of the November 2003 Agreement. (See id.)

Thereafter, Finisar, while reserving its right to argue that it no longer had the obligation to pay royalties under the November 2003 Agreement, paid JDSU the royalties Finisar calculated were due under the November 2003 Agreement for the period January 1, 2007 through March 31, 2008. (See First Amended Compl. ("FAC") ¶¶ 28-29; Amended Ans. to FAC ("Ans.") ¶¶ 28-29; Chan Decl. Ex. F.)[4] JDSU did not dispute, and has not disputed, Finisar's calculation as to the amount of royalties due and so paid. (See Chan Decl. ¶ 12.) Further, JDSU's "in-house legal counsel" has stated JDSU has "no intent to terminate the license granted under [the November 2003] [A]greement." (See id. ¶ 13.)

## DISCUSSION

A party who files an action for declaratory relief is seeking, in essence, a judicial determination that it would have a valid defense to a lawsuit with which it has been threatened. Consequently, a court "determine[s] whether federal court jurisdiction exists in a case seeking declaratory relief by applying the well-pleaded complaint rule not to the declaratory judgment complaint, but to the action that the declaratory defendant would

---

[4]When Finisar paid the royalties, Finisar also stated that, by making the payments, it was not "conced[ing] that any or all of the products included in Finisar's calculation actually fall within the definition of 'Honeywell Licensed Products.'" (See Chan Decl. Ex. F.) Neither at the time Finisar made such payments, however, nor at any future time including and up to the present date, has Finisar actually asserted that any product included in its calculation is not a product that would infringe but for the license. Thus, there neither was nor is a case or controversy based on the above-quoted statement, nor does Finisar argue otherwise.

3

have brought." See Speedco, Inc. v. Estes, 853 F.2d 909, 911 (Fed. Cir. 1988). Here, because the parties are not diverse,[5] the Court has subject matter jurisdiction over the instant action only if the Court would have federal question jurisdiction over the action JDSU threatened to bring.

As relevant to that inquiry, the Court first observes that the parties have at all material times agreed that the November 2003 Agreement remains in effect, such that Finisar has a license to use the patents referenced therein, but disagree as to whether the terms of the November 2003 Agreement have been modified, such that Finisar now has a contractual right to use the license without having to pay royalties. On April 29, 2008, JDSU, aware of the parties' respective positions, advised Finisar of its intent to file a complaint for breach of contract in state court, and, as noted, the complaint sought recovery of royalties due thereunder and a request for an audit. Such claims would not appear to arise under federal law. See Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc., 755 F. 2d 1559, 1562 (Fed. Cir. 1985) (holding claim by patent licensor against licensee "seek[ing] recovery of royalties" or for "damages for a breach of a license's covenants" is not claim arising under federal law). Finisar argues that this Court nonetheless has federal question jurisdiction over the instant action based on two separate, although related, theories.

**A. Threat of Infringement Action**

Finisar argues that JDSU's threat to file the proposed Complaint for Breach of Contract should be interpreted as including a threat to file a federal claim for patent infringement against Finisar.

Where a party files a declaratory relief action seeking a judicial finding that its product does not infringe a patent, the action arises under federal law if, at the time the action was filed, said party was "under reasonable apprehension or threat of being sued for infringement." See Cordis Corp. v. Medtronic, Inc., 835 F.2d 859, 862 (Fed. Cir. 1987).

---

[5] Both Finisar and JDSU are Delaware corporations who have their principal place of business in California. (See FAC ¶¶ 1-2; Ans. ¶¶ 1-2.)

4

Finisar argues that if it had refused to pay the royalties demanded by JDSU under the November 2003 Agreement, there existed a "potential" JDSU would have sued Finisar for patent infringement; consequently, Finisar argues, federal question jurisdiction exists in light of such potential. In support of this argument, Finisar relies on Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), which Finisar argues involves "nearly identical" facts.

Some of the facts in Medimmune are indeed similar to the facts presented herein, specifically, a dispute as to the licensee's obligation to pay royalties under a license agreement and the licensee's payment of royalties under protest. Medimmune is distinguishable, however, because the matter came before the Supreme Court on a motion to dismiss, and the Supreme Court assumed as true the licensee's allegation that the licensor had made a "clear threat" to terminate the license agreement and sue the licensee for patent infringement. See id. at 121-22.[6] Here, by contrast, the matter is past the pleading stage, and no evidence has been submitted to suggest JDSU either had or has any intention of revoking the license rather than enforcing its rights under the license. Nor has Finisar offered any evidence to support a finding that the parties, either at the time JDSU threatened to file its proposed Complaint for Breach of Contract or at the time the instant action was filed, disagreed as to whether the patents were invalid or unenforceable or as to whether Finisar's products would not infringe. Cf. id. (stating licensee "did not think royalties were owing, believing that the [ ] patent was invalid and unenforceable, and that its claims were in any event not infringed by [the licensee's product]"). Significantly, neither party has taken the position that the November 2003 Agreement, under which Finisar has a license, is not in effect, and, as noted, there is no evidence to support a finding that JDSU has any intention of repudiating such agreement, much less that such intention was communicated to Finisar before the instant action was filed. Cf. Cordis, 835 F.2d at 861-63

---

[6]The issue addressed in Medimmune was whether a case or controversy existed in light of the licensee's having paid the royalties, which issue the Supreme Court decided in the plaintiff's favor. See id.

5

1  (holding licensee had "reasonable apprehension" it would be sued for infringement by
2  licensor, where licensor stated an "inten[tion] to terminate the license agreement" unless
3  certain royalties were paid and further stated such payment "would not dispose of [the
4  licensor's] claims for . . . past infringement"). Rather, as the evidence offered by each
5  party in support of their respective positions on the merits of the instant matter establishes,
6  the sole dispute between the parties is as to whether, under state law, the parties have
7  modified the terms of the November 2003 Agreement such that Finisar now has the
8  contractual right to use the license without having to pay any royalties.

9  Accordingly, the Court finds Finisar has failed to establish that, at the time the instant
10 action was filed, Finisar was under a reasonable apprehension or threat of being sued by
11 JDSU for patent infringement.

**B. Proposed Complaint for Breach of Contract**

Finisar argues that JDSU's proposed Complaint for Breach of Contract necessarily presents a federal question.

"When the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action . . . which will determine whether there is federal-question jurisdiction in the District Court." Public Service Commission v. Wycoff, 344 U.S. 237, 248 (1952). Where a party to a license agreement alleges breach of contract claims, federal question jurisdiction arises only if the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." See U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (internal quotation and citation omitted). In U.S. Valves, for example, the plaintiff, an exclusive patent licensee, alleged the defendant licensor breached the license by selling patented products and their equivalents; the Federal Circuit held the licensee's right to relief under state law necessarily depended on resolution of a substantial question of patent law, because the licensee was required to establish the licensor sold products that "were covered by the licensed patents," and said showing would require the trial court to "interpret

the patents." See id.

Here, the proposed complaint alleged: "[Finisar] has breached the Agreement by falsely claiming that [JDSU] entered into an agreement waiving its rights to royalty payments." (See Yamalova Decl. Ex. E ¶ 6.) Consequently, the factual dispute that would have been presented, had JDSU's proposed state law complaint been filed, was whether the November 2003 Agreement had been modified by another agreement such that no royalties were due under the November 2003 Agreement. Contrary to Finisar's argument, resolution of such dispute would not require consideration of any federal patent law; rather, it would only require consideration of state contract law pertaining to contract formation and/or modification. See Luckett v. Delpark, 270 U.S. 496, 502 (1926) (citing "general rule" that "suit by a patentee for royalties under a license . . ., or for any remedy in respect of a contract permitting use of a patent, is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such"); Jim Arnold Corp. v. Hydrotech Systems, Inc., 109 F.3d 1567, 1575 (Fed. Cir. 1997) (observing where "construction or enforcement of a contract or license is the issue," jurisdiction "lies not in federal courts but in state courts").

Accordingly, the Court finds Finisar has failed to establish that resolution of JDSU's proposed state law complaint, had it been filed, would have necessarily depended on resolution of a substantial question of federal patent law.

## CONCLUSION

For the reasons stated above, the Court lacks subject matter jurisdiction over the instant action, and, accordingly, the First Amended Complaint is hereby DISMISSED without prejudice.

**IT IS SO ORDERED**.

Dated: March 25, 2009

MAXINE M. CHESNEY
United States District Judge

7